We'll hear argument first this morning in case, the original case, No. 141, Texas v. New Mexico and Colorado. Ms. O'Connell. Mr. Chief Justice, and may it please the Court, the Rio Grande Compact is an unusual interstate compact in that it does not require New Mexico to deliver water to the Texas state line. Instead, when the compact was adopted in 1939, it incorporated and relied upon an existing Bureau of Reclamation project as part of the Equitable Apportionment Framework. Because Reclamation controls releases from the project for delivery to contract holders below the reservoir and in Mexico, the State of New Mexico asserted that this case could not go forward without the United States' participation as a party to be bound by this Court's decree. To permit a full resolution of the dispute, the United States intervened as a plaintiff, filed a complaint that presented the Federal Government's interests that are at stake in this dispute, and explained how injunctive relief against New Mexico could be shaped to protect those interests. In its complaint, the United States did not distinguish between claims brought pursuant to the compact and claims brought pursuant to other laws. That distinction is at issue because the master in his recommendation distinguished between such claims. Sotomayor, I'd like to know what they are. So could you identify them first, and then tell me how any interests have not been addressed in the New Mexico State action? I know that's not an issue in this discrete question before us, but I still don't quite understand why you need this claim. What's different to the new Mexico claim? You're asking about the difference between a compact claim and a claim brought under a reclamation law, for example? The treaty or reclamation. I think the problem we're trying to avoid here is that when the United States sues somebody for a violation of reclamation law, taking water from a reclamation project without a contract, or acting in a way that undermines the United States' ability to comply with a treaty, it's typically suing the individual water users that are violating those laws or interfering with that obligation of the United States to deliver water under a treaty. What we're trying to avoid here is a future motion to dismiss filed by New Mexico, which indicates or insinuates on page 14 of its reply brief that actions brought under reclamation law or under the treaty should be filed against individual water users. We think we can file these claims against New Mexico because of the compact. We can file them against the State of New Mexico because New Mexico has agreed in the compact to protect the project and to protect water that's released from the project to meet its' Sotomayor, did you not file a claim under the under reclamation law? The special master said he recognized a claim under that law. But did you make any claim under that law, or were you staking your claim on your compact claim? Our complaint doesn't distinguish between claims brought under the compact and claims brought under reclamation law. What our complaint does, as we've done in other cases where we've intervened as a plaintiff, is set forth what the United States' interests are, and then tell the Court how we think it can shape injunctive relief against New Mexico to protect those interests. So can you explain at the outset, you're not claiming that every time there's a compact approved by Congress, you would have a right to come into court as a party? That's correct. And so what's the dividing line between when you can come in as a party under a compact and when, despite a compact, you can't come in? Where the compact protects specific Federal interests that are at stake in the dispute that's been filed in this Court, then we believe the United States can intervene as a plaintiff and bring claims against New Mexico that are based on that compact. Sotomayor, but what's the Federal interest that was in the compact? The compact does not make any reference to your treaty obligations or to how you meet those. It doesn't appear to make any reference to any of the Federal interests that you've been identifying. So do that for me. Make the connection. Okay. I think it very clearly does refer to our treaty obligations in a way that protects them. This is in the compact. It's page A3 of the appendix to the master's report. We're looking here at the definitions of project storage and of usable water. So that's Article I, K, and L of the compact. Article IV defines New Mexico's obligation to deliver water into Elephant Butte Reservoir into the project. Article I, K defines project storage as the combined capacity of Elephant Butte Reservoir and the reservoirs below it. Those are all projects operated by reclamation. In Article I, L, the definition of usable water says that the usable water is all water exclusive of credit water which is in project storage and which is available for release in accordance with irrigation demands including deliveries to Mexico. Those deliveries that Article I, L, refers to, what the usable water that's delivered into the project is to be used for, are releases that the Bureau of Reclamation makes because it operates the project, it has contracts with irrigation districts below the project, and it has a treaty with Mexico saying how much water they are entitled to get. Roberts, what difference does it make, I mean, if you are not entitled to raise this claim as a party, certainly you can participate as an amicus and make whatever arguments you want about how the compact should be properly construed, right? That's correct. So what difference does it make to you which way we rule on the question whether or not you're entitled to raise these claims yourself? I think a couple of reasons. First of all, we've intervened in this case because New Mexico asserted that the United States operates this reservoir, that the court will be deciding what is Texas's compact apportionment, what is New Mexico's compact apportionment under the reservoir. And as New Mexico explained in its brief opposing Texas's motion for leave to even file this complaint in the first place, you need the United States to be bound by that decree because we are the entity that releases that water. Additionally, we have interests that are at stake in delivering water to Mexico pursuant to a treaty that make sense, where we would like to be a party presenting the Federal interests rather than being an amicus. This is a pretty basic question, I suppose I should know, but can you compromise State rights in the negotiation and determination of a treaty? I mean, could you negotiate a treaty with Mexico that says we're going to give you this many acre-feet of water that is already appropriated somewhere else, and then that treaty obligation trumps whatever the prior allocations are? I'm not totally sure. I think probably yes. In this case, it doesn't matter because the treaty preexisted the compact. The treaty was enacted in 1906. The compact was enacted in 1939. And so that treaty obligation predates the compact. Well, usually the latter in time prevails, because Congress can pass a statute after a treaty. It's not, this is not a completely clear area of the law, but there's a general working rule applied in some of the cases that the later in time controls if there's a conflict between a treaty and a later Federal statute. And we don't think there's any kind of a conflict here. In fact, Article 16 of the treaty specifically disclaims any intent to affect the United States treaty obligation to Mexico. So we think that article should be read to mean that we're still going with 60,000 acre feet, we're still going with the terms of the treaty obligation, which Congress, as you say, Justice Kennedy, could change as a matter of domestic law. But here, the parties agreed in the compact that they would protect releases from the project, that that water delivered into the project becomes usable water, that reclamation releases in accordance with irrigation demands and to satisfy its treaty obligation to Mexico. I don't understand what you mean when you say that if you're not a party, you're not going to be bound by the decree. I mean, if we determined that New Mexico is free to take additional water, whatever it is, under the under the between the end of the reservoir and the borderline, what does it mean to say you're not bound by that? Well, I think that's sort of the flip side of the argument that we're a required party. You need the United States to implement that decree. And surely, I mean, I don't know that if the Court said here's what Texas' compact apportionment is and here's what New Mexico's is, that the United States would sit back and say, well, our contracts still say a different amount, so we're going to go with a different amount. But I think that's what makes us a required party. That's why New Mexico is asserting that you need us here, and that's why we're here trying to be helpful and asserting in our complaint what the Federal interests are that we are seeking to protect. So since the United States needs to be bound by that decree in order for there to be complete relief against the between the parties, we are here, we are willing to be bound by that decree, and all that we're asking is that we be permitted to proceed. Kagan Would I be right, though, that your argument would also allow you to have initiated the suit in the first place? In other words, even if there hadn't been a suit between the States that you could have said, New Mexico is taking too much water and is preventing us from meeting our obligations, and that you could have initiated a suit under the compact? Yes, we do make an argument at the end of our brief in opposition to New Mexico's motion to dismiss that even if Texas's complaint were dismissed here, the United States' claims against New Mexico could go forward. I don't think the Court needs to reach that, because Texas's complaint is going forward. This Court has denied New Mexico's motion to dismiss. But what's the difference? How could we say, yes, you have the right to intervene, even though you don't have the right to bring your own suit initially? The Court's standard for intervention is that intervention of the United States is appropriate where there's distinctive Federal interests at stake that are best presented by the United States. So, I mean, I guess the Court could say, you know, we don't have any claims, but we could be a defendant, something like that. We need to be here in the case in order to be able to present evidence and to be able to be bound by this decree. But our argument that we – So, Connell, one of the Federal interests you've asserted is the treaty with Mexico. And I'm curious how it interacts with this Court's decision in Medellin, where this Court distinguished between self-executing treaties and treaties that aren't self-executing. Is the treaty here self-executing? And if it's not, then how is it a Federal interest to seek a binding enforceable judgment on the basis in domestic law of a treaty that isn't enforceable under domestic law? I am not sure. I have not – the State Department was not included in our, you know, our collaboration in this case, so I don't – I actually don't know the answer to whether it's a self-executing treaty. It was enacted in the public laws. It has been executed for how many years? It's been in existence since 1906. And the United States makes deliveries pursuant to – in its – in the Bureau of Reclamation's 2008 operating agreement with the irrigation districts. It calculates what the portions are that are given to each of the States. I'm sorry. You said it was a public law. Why don't you follow that up? I mean, it was enacted in the statutes at large. It's, you know, it is part of the United States. It is enacted, unlike some treaties, it's enacted as a statute. That's correct. Well, that's the end of that, isn't it? Okay. So it's been enacted in the courts. Is it? Do we know that that's the end of that? I mean, it sounds like you haven't studied the question of whether it's self-executing or not. Does the government have a position on that? I don't. Okay. I don't. All right. Justice Kagan, to get back to your question, the reason why we think that we can bring a claim to enforce this compact against New Mexico is based on this Court's line of cases that we've cited a few in our brief sanitary district of Chicago versus United States, and a Fourth Circuit case, the County of Arlington versus United States, where this Court and the Fourth Circuit in that case have held that the United States can bring suits for injunctive relief to protect federal interests that are at stake in a dispute. In sanitary district of Chicago, the United States sued an Illinois corporation that was using too much water, water in excess of its permit allocation, and the United States brought a suit directly against the corporation. This Court said there's no statutory cause of action that's required. The United States can just bring that claim for injunctive relief to protect. And if I could return to Justice Sotomayor's question to make sure I understood the answer to it. I know you're afraid that if this goes forward under Reclamation law, you might be subject to this motion to dismiss on the ground that you can't sue a State under that law. But putting that aside, is the content of the two suits, if you had brought the suit under Reclamation law and if you had brought the suit under the compact, is the content of the suits different or the same? I think it's the same, because and that's part of the reason why we are filing an exception here to the master's recommendation that our complaint has to be dismissed to the extent it states a compact claim, is that the reason we think New Mexico is bound by these obligations to protect the project and to have its water users not violate Reclamation law or undermine the treaty is because New Mexico has signed on to the compact agreeing to protect the project. Roberts Your argument really is like an implied right of action argument, isn't it? I mean, the compact doesn't give you any rights, and yet you say because it affects your interests, you have a right to sue. And you make the third-party beneficiary argument, which is an argument that's often made to support an implied right of action. But you have to approve a compact, you, the Federal Government, before it goes into effect. Couldn't you have protected your interests at that time? By saying we're not going to approve it, we're not going to approve it unless we have the right to bring, you know, claims to enforce it. And you can imagine a group of States or two States saying, all right, I'm happy to agree with this, but we don't want the United States coming in and, you know, mucking everything up. And so long as you're okay with that and, you know, you give your consent, I don't know why you should be allowed to litigate as a party. I'm not aware of any compacts where the United States has preserved that right for itself to intervene and bring suits to bring people into compliance with a compact. I think here, I wouldn't necessarily think of it so much as a compact claim, but a suit for equitable relief where the relief we're asking for is that New Mexico be required to comply with its compact obligations. That's where the implied right of action is coming just from this Court's cases like Sanitary District, In Re Debs, the San Jacinto Tin Company. It's more of just an equitable action, and because this Court is acting in equity when it's interpreting interstate compacts, the relief that we're seeking is that New Mexico be brought into compliance with its compact obligations. If I could, I'd like to reserve my time for rebuttal. Roberts. Thank you, counsel. General Keller. Thank you, Mr. Chief Justice, and may it please the Court. The U.S. can raise its own compact claims because the compact creates a statutory duty for the U.S. to distribute water to Texas. The statutory duty arises from three key facts. First, the U.S. owns and operates the Rio Grande project. Second, that project is a necessary predicate for the compact's equitable apportionment, to quote Nebraska v. Wyoming. And third, that project is the sole means to actually distribute the equitable apportionment to Texas. And so to put it succinctly and quote the Special Master, the signatory States intended to use the project as the vehicle to guarantee delivery of Texas's equitable apportionment. The U.S. can therefore sue New Mexico if New Mexico's actions are preventing the U.S. from fulfilling this statutory duty to distribute Texas's equitable apportionment. Kennedy, could the United States file General Keller an action in the district court in the absence of a dispute between Texas and New Mexico, and the suit would say there's a violation of the compact, even though there's no dispute between the States? Yes, because of the nature of this unique compact. Because the water that New Mexico delivers to the Federal Government is in the middle of New Mexico instead of at the State line, the United States then as a carrier or distributor has a duty to ensure that there's an equitable apportionment. And so this goes to the heart of the Special Master's correct conclusion that when New Mexico deposits water at Elephant Butte Reservoir, they must relinquish control. Now, when New Mexico's relinquishing control, they're relinquishing control to the Federal Government. There would be no other way for this compact to work, and that's precisely why the And so, Justice Kennedy, the United States could sue New Mexico to enforce its ability to ensure that Texas receives its equitable apportionment, just like the compact does provide for the usable water definition and the irrigation demands, including what is also being delivered to Mexico. And it is the longstanding practice of the parties, and this is in the master's report at page 209, that there's generally a 60,000-acre feet of water being delivered to New Mexico, and that's coming off the top before we get into the parties' accepted 57 to 43 percent split between the water. But all those issues about how exactly and what quantities of water will actually occur, of course, will be litigated in due course. But for now, the issue before the Court is fairly narrow. It's under this particular compact, when the water is being delivered in the middle of another State, and yet a downstream State has an equitable apportionment, can the United States bring its own claims as a carrier and distributor of the water, and it can. Sotomayor, is that different from saying they can they're bringing an action under the terms of the compact? No, that would be a split. Or is that the same, is that just another way of saying the same thing? I believe it is another way of saying the same thing. Their claims arise under the compact itself, because the compact is doing an interstate equitable apportionment between New Mexico, Colorado, and Texas. Now, my friends on the other side have spoken often about treaty claims and reclamation law claims that would invoke State law, but the central focus of this lawsuit that Texas has raised here is about the compact and the interstate equitable apportionment, as opposed to any intrastate allotment. And so the Reclamation Act claims that the special master said could go forward that the United States has raised, those may not necessarily be claims against another State as a sovereign. And so there would be potential confusion if the United States' claims were not compact claims in an original action between sovereigns, but rather instead were somehow reclamation law claims that were invoking State law against particular water users. And so I think for judicial economy, the proper way for this lawsuit to go forward is indeed to allow the United States and Texas to bring compact interstate equitable apportionment claims.  who are diverting. Sotomayor, you are actually taking the position that the Federal Government can't sue another State for reclamation claims. They would have to sue the farmers who are diverting. That is probably correct, because there would not necessarily be a State law basis under the Reclamation Act to invoke a lawsuit against a sovereign State. So unless the government can claim that New Mexico has an obligation and it can therefore sue under the Compact, that's why it won't. Now I understand. And not only that, but also under Hinderliner in that line of cases, when there are these disputes between States, it is going to be New Mexico's duty to prevent diversions of water. So even if there were particular water users, under this Compact, New Mexico cannot allow diversions that would interfere with Texas equitable apportionment, which is exactly what we're pleading. Sotomayor, let the U.S. intervene, but not beyond addressing any legal matter beyond the Compact claims. I wasn't quite sure what you envisioned they might try to do and why we would at this early stage opine on that issue. It seems like an advisory opinion to the special master. Well, you would not necessarily have to opine on precisely how the litigation will go forward. However, the crux of this lawsuit is an interstate equitable apportionment Compact claim. And I believe, Justice Sotomayor, that's precisely why the United States is here wanting to raise those Compact claims. But for purposes of how that would operate, knowing whether the suit would be against a sovereign State or knowing if it would be against individual water users, that would certainly affect the interest involved in how the case would proceed. Why is that? I mean, is this really just a question of timing? I mean, they're saying the United States can't raise these claims because of our view about how the Compact applies. But, I mean, is there any reason not to go forward with the litigation? At the end, if the master thinks they don't have a claim under the Compact clause, then they can say that at that time. But at this point, we now have to make determinations that I'm concerned about the impact on other Compacts. And what's involved besides simply the timing? Mr. Chief Justice, from our perspective, the practical difference is going to be minimal. The State of Texas will continue to bring its Compact claims, and the equitable apportionment is at the center of that dispute. At the same time, the Court can rule that the United States can bring its own Compact claims here because of the unique nature of this Compact, given that the delivery of water occurs in the middle of New Mexico, and then the United States is the distributor and carrier, to use the language of the 1945 Nebraska v. Wyoming decision, to ensure that that, that Texas's equitable apportioned water, while it is being relinquished control in the middle of New Mexico instead of the State line, does reach Texas and, indeed, to New Mexico. Kagan. Kagan. I think I should have asked Ms. O'Connell this, but do you view the United States' interests as diverging from Texas's interests in any way? We – yes, we will have some disputes, and this will come up later in the litigation, over precisely how the equitable apportionment should be calculated. But for purposes of the question presented to this Court today, we do not diverge, and we believe the United States should be able to raise its own. No, but I meant as the litigation proceeds. Would there be a difference if only you were in the lawsuit as, you know, and with, presumably, the United States as an amicus, versus having the United States in as a party? Well, potentially, Justice Kagan, just based on the arguments that would be raised as to whether the equitable apportionment was actually being fulfilled. But as far as the main thrust of the argument, the United States agrees with Texas that New Mexico is allowing diversions of water and, therefore, interfering with the equitable apportionment of water to Texas. We're agreeing on that. I'm not sure you're answering, Justice Kagan. She's asked, go to the end of the litigation. Where would the U.S. and the U.S. differ? Well, one issue for you. What issues? Are there issues in which there can be a difference? Possibly. One issue, for instance, there was a settlement agreement, an operating agreement, that the State of Texas never entered into, and so it could not be bound by. But the current practice is to use a regression analysis that was looking at dates from the 1950s to the 1970s to calculate return flows, which is going to affect the amount of water that is going to be part of the project lands, the usable water. Now, our position is that it's the compact in the time of 1938, when the compact was entered into, that should control that analysis, rather than a regression analysis years later. That is one example of an issue where the State of Texas and the United States are not exactly going to be raising the same arguments. However, these are going to be arguments that will play out in the remainder of the litigation. But for purposes of the issue today, we agree that the United States can raise its own compact. Sotomayor, can I presume you'd be happier if those issues were settled in one litigation rather than to have to start an action against the United States?  And we believe that this lawsuit should continue forward and that the State of Texas be allowed to raise these compact claims and settle this interstate equitable apportionment as soon as practicable. If there are no further questions. Thank you, Mr. Chief Justice. General Yarder. Thank you, Mr. Chief Justice, and may it please the Court. I'd like to begin, if I can, by discussing the United States' exception to the Special Master's Report and turn later to Colorado's first exception. Regarding the United States' exception, what the United States is asking for here is both incorrect and unprecedented. Colorado is a party to nine interstate compacts, many of them apportioned water on rivers with significant Federal projects. Several of those compacts expressly mention those projects in the compact's text. Yet in a century of Colorado negotiating, administering, and litigating compacts like those, including those, the United States has never asserted and this Court has never recognized the right of the United States to bring an independent action under a compact. If the United States didn't assert it, then of course there would be no reason for this Court to pass on it. But the fact that the United States didn't assert it in the past doesn't mean that it couldn't assert. Well, it's true this Court has never foreclosed such a claim, but if you look back through cases, including Kansas v. Nebraska, which is perhaps the best, most recent example, that was a case between States that resulted in a settlement agreement among States. The United States wasn't a party to that settlement agreement. In fact, if you read the settlement agreement, the United States is sort of relegated to amicus status in future disputes under that settlement agreement. If the United States has the authority to bring independent claims under a compact, how do the States have the ability to settle claims once and for all under a compact that the United States is a party to? Ginsburg. Is that case involved in what seems to me special about this case is the prominence of the Federal facility. And I don't agree that the prominence of the Federal facility in this compact is substantially less than the prominence of Federal facilities on, for example, the Republican River. If you review the briefing of the United States in the Republican River case from 2015, they said, look, the groundwater pumping from New Mexico could impede this project to the point where people will start defaulting on contracts. That's a pretty significant interest the United States asserted there, very similar to the interest it's asserting here, and yet the United States was amicus in the Republican River case, not a party. Kennedy. But I'm not sure they're the same, because as the government pointed out in its argument, one, is it 1L and 1K, make specific, in the compact, make specific reference that this has to be available for release in accordance with irrigation demands, including deliveries to Mexico. This is an international law obligation on the United States that the United States would be remiss if it ignored. Absolutely, and that's why we think it is perfectly appropriate for the United States to bring a treaty claim in this case. But what the compact does not do is, within the context of the apportionment among the States, give the United States a right under this compact. And this compact, the preamble of the United States is consistent with, indeed, furthers its obligations under the compact. The treaty does? Yes. Well, I think it's a question of, there are multiple layers of laws that are issued in interstate water cases, obviously. You have State water rights. The United States must obtain those State water rights to operate the project. That's as far back as the Reclamation Act of 1902, which preceded this compact. There's the treaty claim. There's Reclamation issues. The question that got Colorado's attention and what we're concerned about is this very new argument, in our mind, of the United States being able to sue against signatory States for relief. And now they're even saying they can initiate litigation in district courts, perhaps this Court, when the States are perhaps negotiating a solution to a dispute. Sotomayor, isn't that Nebraska v. Wyoming? There the U.S. wasn't seeking an apportionment of rights. It was seeking a declaratory judgment. Basically, like in this case, as an operator of the facility at issue, now, it was Wyoming who sued the United States, but it was they're pretty much mirrors of each other. I don't necessarily think they're mirrors of each other. I do acknowledge there's some ambiguity in the way those, I think there are four or five separate opinions that the special master discusses and the briefing discusses. A couple of points of difference. One, the United States was made a party to that equitable apportionment decree. I think that is significant. The United States is not a signatory to this compact. So I don't think Nebraska on that issue is necessarily dispositive here. I also, the special master found it very significant that the United States never sought affirmative relief. It never, it sought defensive summary judgment relief in the 93 opinion, but I don't think it ever sought affirmative relief under that decree. And in fact, it disclaimed that it had any obligations under that decree. And in earlier decisions by this Court in that same ongoing dispute, the Court said, look, Federal reclamation water rights come from State law. The apportionment will encompass that State law. And so it's sort of, it's the tail wagging the dog to say that the United States, by virtue of State water rights to operate a project, gets to sue a State outside the context of an ongoing equitable apportionment case. Breyer, I take it. Breyer, it's not surprising that in some cases the United States could be a party to such a suit. The Constitution says that no State shall, without the consent of Congress, enter into any compact, and therefore, we need the consent of Congress. Obviously, the founders who wrote this wouldn't want three or four or five or six States to enter into some compact that might wreck the union. So doesn't that suggest that they do have a right, the United States, to intervene at least where there is a Federal interest? And now here you've seen the Federal interests listed, the third-party beneficiary interests, the interests that they have to deal with this water, the interests that they have in terms of the Treaty of Mexico. So it seemed to me quite simple. The Constitution foresees that they can intervene where there's an interest. They have several interests. End of case, unless there's something that I don't see. Well, I hope there's not, because I disagree with that. There is something I don't see. The United States absolutely has to approve a compact. But what it approves is the terms of that compact, and the terms of this compact give substantive rights to Texas and the Commissioners who have voting rights the United States does not have a voting right on this Commission to demand releases of water to carry out the equitable apportionment of the compact. What I will say is I think there is a difference that the United States doesn't draw in its briefing between legislation carried out under the Commerce Clause or under the Treaty power and choosing to go a different route, which is to say telling New Mexico and Colorado and Texas back in the early, early 20s, negotiate this compact and decide the apportionment among yourselves, and that will be the way that we determine how this water is apportioned. That's very different from the United States saying we will exercise our commerce power or treaty power to determine the equitable apportionment of this river and impose it on the States. Kagan. Kagan. I mean, you don't disagree, do you, or tell me if you do, that the United States has important interests here. And, you know, part of those interests are international, having to do with the relationship with Mexico, but part of them are domestic, because the United States is and was, even prior to this compact, in a set of contractual agreements that give it duties with respect to this water. So do you agree that the interests are pretty strong here? Yes. Okay. So how, in your view, does the United States protect those interests? Well, I think it two ways. First of all, with respect to the treaty interest, absolutely we think that it's appropriate to include treaty claims in this case. Second of all, with respect to all of those interests, which are identical to those that are at issue in cases like Kansas v. Nebraska, it does what it's always done. I don't know what that means. Do those mean the domestic issues? Yes. The domestic issues, which Congress has said for 130 years project rights are State law water rights that are subsumed within an equitable apportionment that the States either negotiate or this Court sets. So it's no different from the many cases that the United States has participated in, either as amicus, which I think is a pretty strong indication that in past cases at least the United States hasn't saw fit to try to establish the precedent of being able to take States into litigation when they're not in litigation, and it can assert those interests and make all the arguments that it needs to make. And I think it gets back to the other question. I'm stuck on this. I understand you're carving out of the treaty interest, but the United States has preexisting contract obligations to two water districts to provide a certain amount of water. And the resolution of this compact dispute could affect the United States' ability to fulfill its contractual obligations. I think you'd agree with that. I would agree with that. And why isn't that significant Federal interest right there? It's not that it's not a significant Federal interest. It's a question of what is the substantive right the United States is asserting here. And it's just like Hinderliter. The United States' rights to this water arise under New Mexico law, in fact, New Mexico territorial law back in 06 and 08. To the extent the equitable apportionment of the compact affects those rights, that was consistent with the scheme that Congress put in place when it said U.S. go to State court and get water rights. That's how we will affect these projects. Sotomayor, I'm sorry. Let's take a situation in which the contract is clear. All right? Forget about surface water. You have to deliver X cubic feet of water every year. And the compact is just like this one. It authorizes the United States to, or there's a Federal law that authorizes the United States to distribute that water in a certain way. Now you breach. It's your position that the government couldn't come in and say to you, deliver the water because I have a Federal interest in ensuring that the contracts that I signed dependent on your clear contractual obligation, doesn't give me a right either to sue you or to bring a claim under that contract. Well, we're obligated you to do something to the, for, to the United, for the United States. Justice Sotomayor, we're not taking a position on any other type of claim the United States may or may not have under other substantive bodies of law, including State law, treaties, and reclamation law. All we're saying is that this, as Texas said, I think several times during argument, at the heart of this case is an apportionment between the States. But think about this. If this goes back, Justice Breyer said, look, Congress approved this compact. Now, it did so against a backdrop in which the United States already had obligations, obligations to Mexico, but also contractual obligations to domestic parties. Now, how could it have approved that compact unless it said, we took a look at this compact and we think it will allow us to fulfill all of our obligations, both domestic and international. You have to think in a case like this that the approval of the compact was premised on an understanding that it would protect the United States' own interests, which is exactly what the United States is trying to assert here. And I think the question is, how does the United States protect that interest? Because the premise of the compact was also the 1902 Reclamation Act, which was in effect for 36 years before this compact was signed, and said very clearly, Federal Government, go to State court, go to State administrative mechanisms to get your water right. And then this Court in Hinderlieter said, and by the way, whatever right you get under State law will always be subservient to and contained within either a compact or a decree set by this Court. So I think it's a question of where, how does the United States protect those interests and what is the substantive body of law under which it can do so? We don't object to the United States bringing arguments into this case for participating, but we want to be very careful about what precedent this sets for other compact disputes in the future. We're very concerned about that. And to go to the other. Roberts, United States says one reason they need to participate as a party rather than amicus is because otherwise they would not be bound by the decree. Aren't you worried about that? I think. In other words, you're going to be, if you prevail, it's not going to mean much because the United States doesn't feel bound by it. I think that again flips the legal regime on its head. Of course they'll be bound. They have a State law water right that rises no higher than this compact. And so they will certainly be bound to the extent that this compact informs the scope of water rights that New Mexico can grant and administer under its law, and same with Texas. One of the things that I. Kennedy, that's the best argument you can make for the fact that the United States has a vital interest here. And we don't dispute it has an interest in this case and ought to participate in this case. Our concern is under what substantive law and what it will be able to do in the future. Bring the United States into the. If a party is bound, but not permitted to be a party, there's something wrong with that. Well, I don't think so, Justice Ginsburg. It's not just the United States who have rights at stake in this case. Every water user in Texas and New Mexico that receives Project Water is very keen on this case and will ultimately be bound by it under Perrins-Patrier. And that's, of course, the whole point of this regime. The States apportion water among themselves. Water rights within those States must be administered consistent with that. And what Congress. Kagan, it's one thing to say that State litigation can bind its own citizens, and it's another thing to say that State litigation can bind the Federal Government without the Federal Government being allowed to participate in that litigation. Well, and the United States for many years litigating these cases has participated in these suits despite strong Federal interests without being a party and asserting claims under the contract. But as was pointed out by Ms. McConnell, the United States was told that it wasn't there, I don't know, was it Colorado joined it, it was just New Mexico, that said the United States is a necessary party to this litigation. And you're saying not only are they not necessary, they're not even permitted to be a party. No, that's certainly not what we're saying. We certainly think that they are a necessary party here, at least under the treaty claims. And that question has been decided. The United States is a party to this case. The intervention has been granted. We don't dispute that and never have. The question is what substantive right is the United States asserting? I would like to go back to the Chief Justice's question, if I could, and the question is what difference does it make here to recognize for the first time this right, which Colorado is very concerned about in this litigation. We don't necessarily think that's necessary. We think the Court can reserve the question. I think that some of the Justices have observed here the issue of deliveries to Texas will be litigated through Texas's compact claim. The issue of deliveries to Mexico will be litigated through the treaty claim. So to recognize this right for the first time here in the context of a case where we don't think it's necessary, I think establishes precedent that just simply isn't necessary to establish in the context of this case. If I could turn very briefly to Colorado's first exception, our point here is just really an echo of what the other States have raised concerns about, which is that this is an apportionment case. Reclamation law claims can introduce a lot of extraneous issues into this litigation that aren't necessarily needed for the apportionment decision to be accomplished by this Court. What I would point you to is to look at New Mexico's district court complaint that they brought against the U.S. and the water districts in 2011, raising reclamation law claims regarding the 2008 operating agreement. There are all kinds of claims in that case. I think if the apportionment is decided by this Court, that will certainly inform State law water rights and the State adjudication. It will also inform reclamation law claims that can then be sorted out in the lower courts as necessary. If there are no further questions. Roberts. Thank you, General. Mr. Rial. Mr. Chief Justice, and may it please the Court. I have three main points that I would like to make on behalf of the State of New Mexico today.  First of all, New Mexico has not taken exception to the Special Master's recommendation that the United States be allowed to raise a claim under reclamation law in order to protect its interests. Finally, New Mexico does not dispute that the United States can bring a claim for alleged interference with its 1906 treaty with Mexico. It's just that that claim also arises or does not arise under the compact, but under the treaty itself. And how do you think those claims would differ from claims that are brought under the compact? Well, Justice Kagan, the treaty itself has a mechanism which allows the United States to enforce the treaty, its treaty obligations at any time. And I think the main difference is that if you, and as this Court has already deemed, that if the United States is allowed to enforce its treaty obligation of the 60,000 acre feet a year under the treaty, then you don't open that door under the compact claim that my colleague was just speaking about, which would allow the United States to, for the first time ever, raise a compact claim in a compact under which it receives no allocation of water. And what about these other obligations that the United States has? You said that you can bring reclamation law claims for those. What's the difference there? I mean, I'm trying to figure out why everybody cares so much that this is a claim under the compact rather than under these other bodies of law. Justice Kagan, I think everybody cares so much because the Reclamation Act of 1902 is a very comprehensive body of law, and it allows the United States to accomplish almost anything that it's looking to do here. It's important to note that there's no claim, there's no remedy that the United States has under the compact that it can't receive under that comprehensive body of law that is the Reclamation Act. But the reason why I think New Mexico cares, and I think Colorado as well, is this Court has never allowed the United States to raise a claim under a compact to which it was not a party, I mean, to which it received no allocation of water, and to which it was not a signatory. Ginsburg. This Court has never had occasion to pass on that question. It used to say never allowed. It didn't disallow. It just hasn't moved on it. Martinez, Jr. Well, Your Honor, I think that's correct, but I think what the danger that we're facing here is that if you read an implicit right here for the United States to raise a claim under a compact which provides it no explicit protections, if you allow them to – if you allow the United States to read that implicit right, then I think you're opening up a dangerous door in which the United States can raise – can try to raise implicit rights not only in this compact, but in every compact across the country. Roberts, I suppose one reason the United States may be interested is if it has compact claims, they're litigated here. If they're under the Reclamation Act, they're litigated in a complex proceeding in State court, right? No, Your Honor, I think the special master in this case found a very elegant solution, and that's why we don't oppose it. In allowing them to participate in this case under the Reclamation Act, as I said, there's no remedy that they've sought in their complaint in this case that they can't get under the Reclamation Act of 1902 that they can get under the compact. And so it would be litigated here in this Court for purposes of judicial economy and to avoid inconsistent courts. And not under State law, but under Federal law? Under the – under the McCarran amendment, the United States water rights are subject to State law, but New Mexico would – and any compacting State – administers the water rights, but we can't do so in a manner which is inconsistent with the compact. Therefore, this Court has already placed those protections in place so that the United States reclamation law claim, and indeed in this case its reclamation project, is protected in the sense that we cannot administer our State water rights, our sovereign water, in such a manner that it interferes with the compact. I'm sorry. Am I right that – that New Mexico had argued at an earlier stage that the United States was a necessary party to this litigation? Yes, Your Honor, we did argue that. And now I'll ask you the same question that I asked before. You argued that the United States was a necessary party in this very litigation, and now you're saying they're not even a permitted party. Justice Ginsburg, I apologize. I'm not saying that. What I'm saying is that New Mexico is arguing that the United States is a necessary party, but their claims arise under the Reclamation Act of 1902 and not under the compact. And so the Special Master was correct in his recommendation that the United States should participate in order to enforce its treaty obligations, but it does so under the treaty, which it can bring in this litigation. And as far as rights it's trying to enforce, as far as its water rights and other interests, those would be brought under the Reclamation Act of 1902 in this litigation. So they are a necessary party, just not – they're just not allowed to bring compact claims, in our opinion. I'd like to point real quickly to the third – it was only a compact. This case was about a compact between New Mexico and Texas, and it was in that setting that you said the United States was necessary. You are correct, Justice Ginsburg. New Mexico backed away from that position when we acceded to the fact that the project is incorporated into the compact. It's just in the incorporation of that project. We're not acceding to the fact that the United States, who is not a signatory and who is a portion of water, has any claims or rights of enforcement under the compact itself. That's between three sovereign entities, the State of Texas, the State of New Mexico and the State of Colorado. What we're saying is that we – the Special Master found a very elegant solution which we support and think that they're – they still need to participate, but participating under the Reclamation Act and under the treaty itself is the manner in which the United States can find its remedies. Sotomayor's Are you differing from Texas and acknowledging that the U.S. could sue New Mexico for a reclamation claim, so that it doesn't have to sue the individual water? I am, Your Honor, in the sense that the Reclamation Act of 1902 is so comprehensive that the United States, under all of the different portions of the Reclamation Act, can sue, in our opinion, the State of New Mexico. And I think it's important to note that in Nebraska v. Wyoming, the United States was actually said, we can't be sued because we weren't apportioned any water. And yet here, the United States is saying we can sue New Mexico even though we haven't been apportioned any water. And so that's inconsistent, in my opinion. When they sought their defensive motion for summary judgment, that was their argument. Do you think a State could sue the United States under this compact if the United States started acting in a way that was inconsistent with its terms? Justice Kagan, yes, I do believe so. I believe that a State has the opportunity to try and sue the United States. For example, if we were to say, if New Mexico was to say, your operation of the project is interfering with our ability to meet our compact obligations to the State of Texas, I believe that we could do that. So if the United States is so integrally a part of this system that a State could sue the Federal Government, why can't the same be true back again the other way? Because the United States doesn't own any right, any water, any rights under the compact or even under the project. Those water rights are owned by the landowners themselves who are represented by their individual States as parents' patron. And so the United States has an interest in the project, and it can certainly sue to enforce to make sure that we're meeting our – that we're not interfering with its project obligations, but it can't sue us under the compact. That's being done by Texas right now. And the – it's important to note that both Texas' claims and the United States' claims arise under the same operative facts. And so Texas will be able to – and I believe both Texas and the United States agree that later in the litigation, they're not sure, as you heard the General say, they're not sure whether or not their interests are going to be the same at the end of this. But to the extent that the United States can sue under the project, they can sue under the compact. They can sue to enforce, in my opinion, if New Mexico is interfering with their project obligations, they can certainly sue to – Sotomayor, but not under the compact. Correct. They're not a party to the compact. I just don't understand that. If the compact requires New Mexico to deliver a certain amount of water to the United States and not to touch that water, that's the government's action. You're not exceeding that that's what the compact says. And it's breaching – and that lack of delivery is breaching other Federal contracts. Why can't they sue under the project? Mr. Chief Justice, I'm not sure. Under the compact? The compact doesn't require the United – I mean, New Mexico to deliver any portion of water to the United States. The project is simply a delivery vehicle. The water is already allocated amongst the three States itself. And while the United States uses the vehicle as a means to meet its treaty obligations with the Republic of Mexico, it's important to note that they have first entitlement to that water and they deliver that water first every year. Thank you, counsel. Thank you for this honor. Ms. O'Connell, you have four minutes remaining. Thank you, Mr. Chief Justice. Three points in rebuttal. The first is in response to Colorado's argument that the complaint filed by the United States in this case is unprecedented. It's not. The case that Colorado is relying upon, Kansas v. Nebraska, was a case where there was an admitted violation of a compact by Nebraska. The States were just talking about what the damages were. The United States operations of any projects in that region were not going to be affected by what the damages were. That's why we participated in this case as an amicus. In other cases, we've cited some in our briefs, Texas v. New Mexico, the Pecos River case, and also Texas and New Mexico v. Colorado, a prior case brought in order to enforce this same compact, the Rio Grande compact. In both of those cases, the defendant states, so in the Pecos River case, New Mexico, and in Texas v. Colorado, Colorado, asserted that the United States was a required party to the action, and so to be helpful, we intervened as a plaintiff in each of those two cases, presented what the United States' interests were, and then asked for general equitable relief, whatever relief would protect our interests. In the Texas v. Colorado, the United States specifically explained that even though it has no apportionment of water under the Rio Grande compact, it acknowledged that the compact could be interpreted in such a way as to affect the United States' interests, and it believed its interests would be protected by Colorado's compliance with the compact. Sotomayor You weren't signatures in either of those two cases, right? O'Connell No. Sotomayor To the compact setting. O'Connell That's correct. And in both cases, we were permitted to intervene. We filed complaints against the defendant State. The second point, just reiterating that, or answering the question whether there's a difference between the claims asserted by Texas and the United States, their interests are not necessarily completely aligned in this case. This is an interstate project that has delivery obligations both in New Mexico and Texas, so the United States couldn't be expected to rely on Texas to assert its interests here. The project also has international obligations to Mexico, as we've discussed quite a bit. And I'll point out that under Article 2 of that treaty with Mexico, if there's not enough water for the irrigation districts in the United States, the amount that we send to Mexico becomes less. And so the United States has quite an interest that we couldn't be expected to rely on Texas to protect in making sure that Mexico is not being shorted because of the way that the compact is interpreted. Finally, just on this point of, as Justice Kagan put it, why everybody cares so much about whether these are compact claims or reclamation law claims, the master said that we could bring reclamation law claims. We're not totally sure that that's enough to bring claims against the State of New Mexico. The reason why New Mexico is a proper defendant against such claims is because of the compact, because the compact has bound New Mexico to protect the project and to allow the United States to release water in order to meet its contract obligations and its treaty obligations to Mexico. And so we don't want there to be any confusion going forward when the master says the United States complaint has to be dismissed to the extent it brings claims under the compact, what that means. We think we sort of need the compact to make those other claims work.  Roberts.